UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE WORLDCOM, INC., et al.
    Reorganized Debtors

-----------------------------------------------------------
ALAN M. GRAYSON,

                Appellant,

                                                  05 Civ. 5704 (RPP)

                                                  **OPINION AND ORDER**

    v.

WORLDCOM, INC., et al.

               Appellees.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Appellant Alan Grayson ("Grayson") appeals from a June 20, 2005 Order of the Bankruptcy Court ("Order") denying his February 25, 2004 Motion for an Order Declaring the Automatic Stay Inapplicable or, in the Alternative, Lifting the Automatic Stay in the WorldCom, Inc. ("WorldCom") bankruptcy proceedings. Grayson seeks to pursue a <u>qui tam</u> action on behalf of the State of California, filed under seal on February 8, 2002, in the Superior Court of California, County of Sacramento, to recover from the Debtors "breakage," the unused portion of prepaid calling cards, which he claims had escheated to the State. Grayson Br. at 1-2.

**I. BACKGROUND**

      WorldCom and its subsidiaries commenced Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York on July 21, 2002. Appellee's Counter Designation on Appeal ("WorldCom Record") Ex. C at 3. By order dated October 29, 2002, the

Bankruptcy Court established January 23, 2003 as the bar date for filing proofs of claim.. Id. Ex. A at 2.

On October 31, 2003, the Bankruptcy Court entered an order ("Confirmation Order") confirming the Debtors' Modified Second Amended Joint Plan of Reorganization ("Plan"). WorldCom Record, Ex. D. The Plan included an injunction which enjoins the commencement or continuation of an action to enforce, attach, collect or recover any debt against the Debtors on or after the Plan's effective date (April 20, 2004). Plan, Id. at Attach. 1, § 10.04.

On December 11, 2003, over ten months after the bar date, the California Attorney General declined to intervene in the Grayson action in the California court, and that action was unsealed. Grayson then filed a First Amended Complaint charging the Defendants violated California's Unclaimed Property Law and False Claims Act by failing to report and pay unused balances on prepaid calling cards. Grayson Bankr. Motion, Grayson Designation on Appeal ("Grayson Record") App. A, at 6; WorldCom Br. at 4.[1] Grayson's proposed Second Amended Complaint, dated February 23, 2004, named Defendants and alleged they violated the California Unclaimed Property Law, Cal. Civ. Proc. Code § 1530-32, as well as the California False Claims Act, Cal. Gov't Code § 12650-55, by knowingly and willfully failing to report and pay or deliver "breakage" to the State Controller; and that Defendants' "past and continuing failure to pay or deliver" the "breakage" to the State Controller violated California's Unfair Competition Act, Cal. Bus. & Prof. Code § 17200. Proposed Second Am. Comp. ¶¶ 2-4, Grayson Record App. A, Attach. A. In his proposed Second Amended Complaint, breakage is defined as follows: "Owners often do not use some of the calling card prepayment. This is called 'breakage.'" Id.

---

[1] On June 21, 2005, after allowing Grayson to amend his complaint several times, the California Superior Court entered final judgment dismissing Grayson's claim in its entirety. WorldCom Br. Ex. 2. Grayson "intends" to file an Amended Complaint naming WorldCom and other parties as Defendants. See Grayson Record App. A at 2.

2

At no time did Grayson file or attempt to file a proof of claim in the Debtors' chapter 11 cases. May 24, 2005 Bankr. Hearing Tr. ("May 24, 2005 Tr.") at 8.

On January 17, 2003, the State of California did file a timely proof of claim for $5,167,254 in debts allegedly owed by Debtors under the California Unclaimed Property Law, but did not include Grayson's claims, as noted by the Bankruptcy Court. Proof of Claim, WorldCom Record, Ex. I at Ex. A; May 24, 2005 Tr. at 7-9. That proof of claim does not include any allegations that the Debtors owed additional amounts to California as a result of pre-paid calling card breakage, although under qui tam procedures California would have had notice of these claims as of the complaint's filing in February, 2002. Id.

On February 26, 2004, Grayson filed a motion in the Bankruptcy Court seeking a declaration that the automatic stay was inapplicable to the Grayson Action, or, in the alternative, requesting that the automatic stay be lifted to allow Grayson to proceed against the Debtors in state court ("Grayson Bankr. Motion"). Grayson Record, Ex. A. On April 2, 2004, the Debtors filed an objection to the motion. Grayson Record, App. B. The Bankruptcy Court held a hearing on the motion on May 4, 2004, two weeks after the effective date of the Plan, April 20, 2004. May 4, 2004 Tr.

On May 24, 2005, the Bankruptcy Court denied Grayson's motion in an oral decision read into the record. May 24, 2005 Tr.[2] On June 20, 2005, the Bankruptcy Court entered an order denying Grayson's motion for the reasons previously stated on the record. June 20, 2005 Order, WorldCom Record Ex. H.

In his decision from the bench, Bankruptcy Judge Gonzalez held that 1) under California Law, "breakage" is not unused and unclaimed property of the consumer and thus does not

---

[2] The Plan became effective on April 20, 2004, so the Bankruptcy Court also considered the relief sought by Grayson as a request to lift the Plan Injunction. May 24, 2005 Tr. at 9; see Stipulation at 2, WorldCom Record Ex. G.

3

escheat to the state; 2) Grayson's claims did not fall under the exception to the automatic stay of 11 U.S.C. § 362, applicable to interference with a state's exercise of its "police and regulatory power;" and 4) the Eleventh Amendment grant of sovereign immunity to the states is not applicable to Grayson's qui tam case on California's behalf; and 4) Grayson's action is barred by the Plan Injunction, and that Grayson had not provided sufficient justification to lift the Plan Injunction.

Grayson filed a notice of appeal from the Bankruptcy Court's decision with this Court on June 20, 2005, and filed a brief on August 4, 2005.

## II. DISCUSSION

### A. Standard of Review

This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and conclusions of law de novo. See Fed. R. Bankr. P. 8013; National Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996).

The decision to grant or deny relief from the automatic stay or, by analogy, the Plan Injunction,[3] is reviewed for abuse of discretion. In re Sonnax Indus., 907 F.2d 1280, 1286 (2d Cir. 1990). The Bankruptcy Court's decision should not be disturbed on appeal where the record shows that court considered the appropriate factors for determining whether cause for relief from the stay exists. See Id. at 1288 (affirming denial of relief because court considered the appropriate factors.)

### B. The Bankruptcy Court's Findings on "Breakage"

Judge Gonzalez found that Grayson was making a claim for the value on prepaid calling cards when the holder does not use all the value on the card. May 24, 2005 Tr. at 4. Judge

---

[3] As noted supra, in note 2, the Bankruptcy Court treated Grayson's request to lift the automatic stay as a request to lift the Plan Injunction, since it had become effective after his motion was filed.

4

Gonzalez also found that the terms of Debtors' tariff and Prepaid Service Agreement, which Grayson admitted governed the cards, prohibited the refund for activated or partially used calling cards, and that those terms provide that Consumers pay a fee in advance for the right to use Debtors' telecommunication services. Id. at 4-5. Therefore, Judge Gonzalez held, the only property held by the Debtors is the remaining amount of fees paid upfront which had become non-refundable after activation upon the first use of the calling card. Id. at 5.

Judge Gonzalez's conclusion is a legal conclusion based on facts presented to him, (as conceded in Grayson's Brief at 17), and therefore these factual conclusions are subject to a clearly erroneous standard of review. Grayson does not show that the Bankruptcy Court erred in its conclusion.

Grayson concedes that until July 31, 2001, Debtors' relationships with customers were governed by tariffs filed with the State and Federal Communications Commission and after that date, by contract. Grayson Br. at 9-11; see Grayson Record App. C. Grayson quotes language from these documents,[4] such as the Tariff's promise that Debtors will "honor all unactivated cards for reimbursement"[5] or "Minutes never expire," to support his argument that Debtors offered refunds, which now must escheat to the state. Grayson Br. at 9-11. The very language that Grayson quotes, however, does not support his conclusion. Rather this language expressly supports the Bankruptcy Court's conclusions that only completely unused cards were eligible for

---

[4] Grayson has provided the Court with an excerpt from Tariff No. 1 and a flyer advertising the "MCI prepaid phone card," both attached as Exhibits B and C to his "Reply in Support of Motion for Order Declaring the Automatic Stay Inapplicable or, in the Alternative, Lifting the Automatic Stay." Grayson Record, Ex. C.

[5] This section of the Tariff reads in full as follows:
> Activated MCI PrePaid cards are non-refundable and will expire on the date specified on the card or the carrier or package in which the card is included. The acquisition of a card will entitle the customer or the authorized user of the customer to make calls from the time of card activation until the available card balance either is depleted or until the card expires, whichever occurs first. MCI will honor all unactivated cards for reimbursement up to November 8, 1996. After this date, MCI shall no longer reimburse customers for unactivated cards that are returned to MCI.

Tariff No. 1, Grayson Record, Ex. C, Attached as Ex. B, at § C 3.264.

any refunds promised by Debtors (but see n. 5 and discussion in the following paragraph), and that it is calling card minutes, not cash, that is due to the Debtors' customers.

Grayson also argues that Judge Gonzalez misinterpreted the claim in his "Complaint"[6] when he found that "Mr. Grayson's action only involves partially used cards which are not entitled to a refund or reimbursement for the unused portion of the card." Grayson Br. at 17; May 24, 2005 Hearing at 5. Grayson argues that there is "no such language in the Complaint" to suggest that Grayson wished to limit "the allegations to partially used cards." Grayson Br. at 17. The language in Grayson's Proposed Second Amended Complaint discussing "breakage," (which he defines as occurring when owners "do not use some of the calling card prepayment") is ambiguous. See Proposed Second Amended Complaint; Grayson Bankr. Motion Att. A, Grayson Record App. A. However, the language in the Tariff that Grayson cites for support of his argument that the Debtors offer refunds for "unactivated [sic] cards" (Grayson Br. at 9, citing Tariff No. 1, Grayson Record, Ex. C, Attached as Ex. B, at § C 3.264) and that Debtors have wrongfully withheld "unused prepayments [from] the Controller" (Grayson Br. at 17) is inconsistent with his claim, since the Tariff states only that "MCI will honor all unactivated [sic] cards for reimbursement up to November 8, 1996" and that after November 8, 1996, "MCI shall no longer reimburse customers for unactivated [sic] cards that are returned to MCI." Tariff No. 1 at § C 3.264. Grayson does not demonstrate that the Bankruptcy Court erred in concluding that WorldCom customers had no property interest in the balances of totally as well as partially unused cards, and that "the only property in question is the property of the Debtors and not property of the State of California . . . ." May 24, 2005 Tr. at 5.

---

[6] In footnote 3 of his brief, Grayson explains that citations to the "Complaint" are to Grayson's Second Amended Complaint, which is attached as Attachment A to Grayson's Memorandum of Law in support of Grayson's Motion before the Bankruptcy Court, and which Grayson has "not filed . . . in the California court because it names the Debtors as defendants." Grayson Br. at 8, n. 3. See Proposed Second Amended Complaint, Grayson Bankr. Motion Att. A, Grayson Record App. A.

6

The conclusions of the Bankruptcy Court are consistent with the opinions of the Superior Court of California, Sacramento County, which has twice dismissed the Grayson action for failure to state a claim, holding that the California Unclaimed Property Law does not apply to breakage. See California ex rel. Grayson, No. 02 AS 00790 (Cal. Super. Dec. 10, 2004), and California ex rel. Grayson, No. 02 AS 00790 (Cal. Super. May 5, 2005); attached to WorldCom Br. as Exs. 1 & 2.

Accordingly, this Court finds that the Bankruptcy Court's conclusion that the State of California has no interest in the breakage claimed in the Complaint is not clearly erroneous.

**C. Grayson's Failure to File a Proof of Claim**

Grayson maintains that he is not barred from proceeding in the Bankruptcy Court because his failure to file a proof of claim prior to the bar date is satisfied by the State's proof of claim. Grayson Br. at 28-29. Grayson argues that 1) his claim is encompassed by the proof of claim filed by the State of California for escheat liability; 2) he should be permitted to amend California's proof of claim; or 3) he should be permitted to file a late proof of claim due to unique and extraordinary circumstances beyond his control. Grayson Br. at 29-30.

First, Judge Gonzalez made a finding of fact when he found that California's proof of claim did not encompass breakage from prepaid calling cards. May 24, 2005 Tr. at 8-9. Grayson's claim that Judge Gonzalez's finding was clearly erroneous is unavailing, since breakage from prepaid calling cards is not specifically mentioned in California's claim.[7] Furthermore, the Attorney General of California's determinations not to intervene in Grayson's

---

[7] On August 10, 2004, Debtors and the State of California signed a stipulation of settlement regarding California's claims, and Judge Gonzalez signed it on August 24, 2004. Stipulation, WorldCom Record Ex. G. The Stipulation addressed California's proof of claim for "$5,167,254.00 on account of alleged escheat obligations" but made no mention of Grayson's breakage claims. Id. at 6. The proof of claim lists the claims of "unredeemed holders of gift certificates and vouchers" and "parties entitled to receive account credit balances and unidentified remittances," but makes no mention of breakage or unused prepaid calling card balances. See Proof of Claim, WorldCom Record Ex. I at Ex. A.

7

action in state court and not to amend its own proof of claim to include breakage are indicative that it did not believe that breakage from prepaid calling cards was included in its claim.

Second, Grayson requests that his proof of claim be treated as an amendment to the State of California's proof of claim. "The decision to grant or deny an amendment to a timely-filed proof of claim rests with the sound discretion of a bankruptcy judge." In re Enron Corp., 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003)(citation omitted). Amendment is not permitted for entirely new claims. Id. Since the State of California chose not to intervene in the Grayson Action, or, in light of Grayson's sealed complaint, to amend its proof of claim to include breakage or to file a separate proof of claim with respect to breakage, Grayson has not shown that the Bankruptcy Court abused its discretion in declining to approve Grayson's claim as an amendment to California's proof of claim.

Third, Grayson argues that this Court should permit him to file a late proof of claim due to "unique or extraordinary circumstances beyond … reasonable control." Grayson Br. at 29-30 (quoting In re Drexel Burnham Lambert Group, 146 B.R. 84, 88 (S.D.N.Y. 1992)). As noted in Drexel, "Since the determination of whether or not a case is an appropriate one in which to grant a request to file late is expressly left to the Bankruptcy Court's discretion, [the District] Court may review the Bankruptcy Court's decision for abuse of discretion only." 146 B.R. at 87. Since Grayson's application came over a year after the bar date and just before the Plan's effective date, the decision was not an abuse of discretion.

Grayson argues that because his action in the state court was filed under seal, he would have violated that seal by submitting a proof of claim in the Bankruptcy Court at an earlier date. Grayson Br. at 30. However, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure provide a process for protecting confidentiality of documents filed with the Bankruptcy Court,

and Grayson could have sought leave to file his proof of claim in the Bankruptcy Court under seal. 11 U.S.C. § 107(b); Fed. R. Bankr. P. 9018. Specifically, Bankruptcy Rule 9018 states, in pertinent part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Fed. R. Bankr. P. 9018. Since Grayson could have moved the Bankruptcy Court prior to the bar date to allow him to file a proof of claim under seal, thereby avoiding violating the California statutory seal, and since allowing Grayson to file a late proof of claim would delay the Confirmation Plan and adversely affect other claimants, it was not an abuse of discretion for the Bankruptcy Court to find that unique and extraordinary circumstances were lacking to allow Grayson to file a late proof of claim.

**D. The Automatic Stay**

Grayson argues that the Bankruptcy Judge erred in holding that the automatic stay (generated by the filing of the bankruptcy petition on July 21, 2002), is applicable to his action, because his action is a proceeding by a governmental unit to enforce the police and regulatory power. Grayson Br. at 21-25 (citing 11 U.S.C. § 362(b)).

11 U.S.C. § 362(b) states, in pertinent part:

> The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—
> . . .
> (4) . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power

Id. Judge Gonzalez found, however, that § 362(b)(4) is to be read narrowly:

9

> This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

May 24, 2005 Tr. at 6. (quoting In re Chateaugay, 115 B.R. 28, 32 (Bankr. S.D.N.Y. 1988)).

Judge Gonzalez found both that 1) Grayson's "action is clearly not intended to protect the health or safety of the public," and that 2) Grayson's action is clearly seeking to protect a pecuniary interest and as such is not exempted from the stay. May 24, 2005 Tr. at 6-7 (citing Chateaugay, 115 B.R. 28). Grayson fails according to both prongs of the Chateaugay test.

Grayson argues that since the Amended Complaint is also making claims under the California False Claims Act and Consumer protection statutes, that City of New York v. Exxon Corp., 932 F2d. 1020 (2d Cir. 1991), and not Chateaugay, is the precedent to exempt under § 362(b)(4) his fraud claims against the Debtor. Grayson Br. at 22. Grayson's citation is to Exxon's citation of the legislative history contemplating exemptions from the automatic stay "where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection . . .," etc. Id. (citing Exxon, 932 F2d. at 1024). Exxon, however, does not address whether section 362(b)(4) of the Bankruptcy Code applies to qui tam actions. Exxon addresses only whether actions by a governmental unit to recover damages for violations of environmental laws fall within the police power exemption to the automatic stay. Exxon, 932 F.2d at 1024.[8]

Here, Judge Gonzalez found that Grayson failed to support the proposition that one acting on behalf of a state can assert the police power exception of 362(b)(4).[9] May 24, 2005 Tr. at 7. Id. (emphasis added). Grayson does not cite any precedent to this Court for his proposition that

---

[8] The Exxon court held that the City's action for recovery of costs incurred in responding to violations of environmental statutes fell within the police power exception, and also noted that 11 U.S.C. § 362(b)(4) "requires that such suits be brought by governmental units, not private persons." Exxon, 932 F.2d at 1024-1025 (emphasis added).

[9] 11 U.S.C. § 362(b)(4) refers specifically to an "action or proceeding by a governmental unit."

a qui tam plaintiff is a "governmental unit" that may invoke the police and regulatory power of the state for the purposes of 11 U.S.C. § 362(b)(4) when, as Judge Gonzalez noted, the state itself has decided not to intervene in the case.[10]

Grayson has not shown that Judge Gonzalez erred in finding that a qui tam action in which the state has decided not to intervene does not fall within the police power exception of 11 U.S.C. § 362(b)(4).

**E. Grayson's Action Does Not Implicate the Sovereign Immunity of the State of California**

Grayson next argues that the bankruptcy proceedings, in seeking "a forfeiture of State property" violate the State of California's sovereign immunity. Judge Gonzalez correctly held, however, that "the Eleventh Amendment's grant of sovereign immunity is not applicable in this case." May 24, 2005 Tr. at 8.

As Judge Gonzalez noted, "the Eleventh Amendment seems only to prohibit making a state a defendant in an action." May 24, 2005 Tr. at 8. The case at bar does not involve a suit filed by another party against a State. Instead, Grayson, *on behalf of* the State of California, seeks leave from the Bankruptcy Court to pursue a suit against the Debtors. See, supra, n. 1. Grayson argues that this is too narrow a reading of Eleventh Amendment jurisprudence, but does not cite any case to support his proposition that the Eleventh Amendment exempts his claim from the Bankruptcy Court's jurisdiction to impose a stay on his qui tam claim against the Debtors.

---

[10] Grayson cites United States ex rel. Jane Doe 1 v. X, Inc., 246 B.R. 817, 819 (D. Va. 2000), for the proposition that "a qui tam suit is . . . undeniably public in nature, as it is brought in the name of, and on behalf of the government, and the government is entitled to the lion's share of any amount recovered." However Judge Ellis explicitly noted in Doe that his holding was limited to the "narrow issue" of "whether the police powers exception to the automatic stay applies to a qui tam False Claims action where the government has not yet decided whether to intervene." Id. at 818 (emphasis added). In U.S. ex rel. Goldstein v. P & M Draperies, Inc., 303 B.R. 601, 605 (D. Md. 2004), Judge Motz held that a qui tam plaintiff in whose case the government had declined to intervene could not invoke the police and regulatory exception of 11 U.S.C. § 362(b)(4). Id. Judge Motz specifically distinguished Doe, 246 B.R. 817, in light of that distinction, but also added that he "followed a different and contradictory line of reasoning." Id.

11

Since Plaintiff has cited no authority, and this Court has found none, supporting the proposition that a qui tam plaintiff can invoke sovereign immunity to allow it to pursue an action against the Debtors, the ruling of the Bankruptcy Judge is not erroneous.[11]

Furthermore, here the State of California submitted to the jurisdiction of the Bankruptcy Court in this case by filing its own proofs of claim before the Bankruptcy Court in this matter. See Metromedia Fiber Network, Inc. v. Various State & Local Taxing Auth. (In re Metromedia Fiber Network, Inc.), 299 B.R. 251, 278 (Bankr. S.D.N.Y. 2003) ("It has been long established that when a state files a proof of claim in a debtor's bankruptcy, it waives any immunity which it otherwise might have had respecting the adjudication of the claim.")(internal quotations omitted). It would be an absurd result if Grayson could assert the sovereign immunity of the State of California from Bankruptcy Court jurisdiction when the State's own filing with that court indicates a lack of interest in pursuing Grayson's claim, and the State itself has submitted to the Bankruptcy Court's jurisdiction in filing its own proof of claim.

**F. The Plan Injunction**

The Bankruptcy Court considered Grayson's request to lift the automatic stay as a request to lift the injunction provision of the Plan, which became effective on April 20, 2004, after Grayson's proceeding had been unsealed. May 24, 2005 Tr. at 9. Section 10.04 of the Plan, labeled "Injunction," states as follows, in pertinent part:

> Except as otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest . . . are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors

---

[11] Grayson invokes one case involving a qui tam plaintiff and an Eleventh Amendment claim, but that case, United States ex rel. Stevens v. Vermont Agency of Natural Resources, 162 F.3d 195, 202 (2d Cir. 1998), involved the question of whether the Eleventh Amendment barred suit against a state by a qui tam plaintiff, whereas this case involves the reverse, a qui tam plaintiff attempting to invoke sovereign immunity for his action on behalf of the state.

12

or Reorganized Debtors with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against [them] . . . (iv) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan, and (v) taking any actions to interfere with the implementation of the Plan.

Plan, WorldCom Record, Ex. D at Attach. 1, § 10.04. Grayson's action clearly falls within this injunctive language. Grayson argues that the Bankruptcy Court erred in finding Grayson's action barred by the Plan Injunction, because "the Bankruptcy Court did not . . . explain what authority it has to prohibit the State from pursuing an action pursuant to the State's police and regulatory power in its own courts." Grayson has not established his right to invoke the Sovereign Immunity of the State of California or its police and regulatory powers as has been discussed in Parts E and D, supra.

In the alternative, Grayson argues that the Bankruptcy Court erred when it determined that Grayson had not shown grounds to lift the Plan Injunction under the Sonnax twelve-factor test.[12] Grayson Br. at 33; In re Sonnax Indus., 907 F.2d 1280 (2d Cir. 1990). The twelve factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Id. at 1286.

---

[12] Both parties concede that the Sonnax factors apply to determining whether to lift the Plan Injunction in this case. Grayson Br. at 33; WorldCom Br. at 21.

Judge Gonzalez's Sonnax findings were as follows:

> First, the Superior Court of California, where Mr. Grayson's case is pending, cannot fully adjudicate the issue before it because Mr. Grayson is seeking property which is part of the estate. Second, as the Plan of Reorganization has been approved, allowing Mr. Grayson's action to proceed in California would defeat the goal of an efficient and expeditious claims resolution process. Third, the California court is of general jurisdiction and not a specialized tribunal; further no such tribunal is necessary to adjudicate Mr. Grayson's claims. Fourth, this action does not involve primarily third parties. Fifth, the Grayson action is not near ready for trial. Finally, it is apparent to this Court that there is a claims adjudication process that has been established and there is no support to disrupt the established process.

May 24, 2005 Tr. at 11.

Judge Gonzalez's weighing of the Sonnax factors in considering whether or not to lift the Plan Injunction is reviewable for abuse of discretion. See Sonnax, 907 F.2d at 1286. Grayson argues that the Bankruptcy Court erred in evaluating the Sonnax factors, but does not present grounds for a finding of abuse of discretion. See Grayson Br. at 34-36. Grayson challenges the Bankruptcy Court findings only on Sonnax factors 1, 2, 4 and 6.

Sonnax Factor One: Partial resolution

Grayson disputes Judge Gonzalez's first finding, that the California Court could not fully adjudicate Grayson's claim, arguing that he seeks property that "escheated to the State before the Debtors filed their petition," and is therefore not property of the estate. Grayson Br. at 35. As already explained, Judge Gonzalez's holding to the contrary is consistent with several opinions in the California court. See Part B, supra. Obviously, even if Grayson's claim had merit, the funds he seeks are currently held by the Debtors and any relief he seeks will have to come out of the estate and would require further review by the Bankruptcy Court.[13]

---

[13] Grayson also argues that the California action *could* fully resolve the issue by dismissing Grayson's claims. Grayson Br. at 35. As Appellees note, however, (WorldCom Br. at 23), "it would be an absurd waste of the estate's assets to permit a claim to be litigated in state court for the sole purpose of having it dismissed."

Grayson further argues that the Bankruptcy Court should have considered whether trial in the California court would lead to a "*partial* or complete resolution of the issues" and instead applied an unreasonably high standard to this factor because "[o]nly in extremely rare instances will an action in another court resolve all of the issues in a bankruptcy." Grayson Br. at 35. Thus, under Grayson's reasoning, Sonnax's language on this factor means little or nothing. Judge Gonzalez by ruling on Grayson's action completely resolved his claim.

Sonnax Factor Two: "interference with the bankruptcy case"

Judge Gonzalez determined that "as the Plan of Reorganization has been approved, allowing Mr. Grayson's action to proceed in California would defeat the goal of an efficient and expeditious claims resolution process." May 24, 2005 Tr. at 11. Grayson asserts that "the bankruptcy court [sic] did not make it clear to which of the Sonnax factors, if any, this applied," and that Judge Gonzalez's determination "is clearly incorrect in that it favors speed at the expense of prohibiting the State from carrying out its responsibility to protect the public from the Debtor's alleged wrongful . . . business practices." Grayson Br. at 35 (quoting In re Fucilo, No. 00-36261, 2002 WL 1008935 at *9 (Bankr. S.D.N.Y. Jan. 24, 2002). In Fucilo, the bankruptcy court permitted the state attorney general to go forward with an action for securities fraud against the debtor in state court because the action was "for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Id. at *4, 6.[14] Additionally, in Fucilo at *9, the bankruptcy court found that the police and regulatory exception applied to the State Action, whereas here Grayson had not demonstrated that a qui tam plaintiff had a right to invoke the police and regulatory powers of the state when the state had declined to intervene in the action. See Part D, supra.

---

[14] The bankruptcy court also noted that the "decision is limited to the facts of this case." Id. at *1.

15

Furthermore, Grayson has made no argument to suggest how the Bankruptcy Court abused its discretion in deciding that allowing Grayson's action to continue in state court would unnecessarily interfere with the administration of the bankruptcy case. As Sonnax factor two indicates, the Bankruptcy Court is not only permitted, it is also expected to consider "interference with the bankruptcy case" in determining whether to lift the injunction. Sonnax, 907 F.2d at 1286. The purpose of the injunction, as well as the automatic stay, is to allow the Bankruptcy Court to administer promptly the claims before it, a purpose which would be undermined by constant disruption if separate claims before other courts were permitted to continue until final resolution in the courts, particularly when the claims involve issues of law easily disposed of by the Bankruptcy Court.[15]

Sonnax Factor Four: no "specialized tribunal"

Grayson argues that Judge Gonzalez applied too narrow a reading of Sonnax factor four, when he held that "the California court is of general jurisdiction and not a specialized tribunal; further no such tribunal is necessary to adjudicate Mr. Grayson's claims." Grayson Br. at 35-36; May 24, 2005 Tr. at 11. Grayson argues that the issue involves "unclaimed property law" and as such, is "a matter exclusively of state law" and that, further, "the California court has expertise in applying California's UPL, which the bankruptcy court surely lacks." Grayson Br. at 36 (citing Fucilo 2002 WL 1008935 at *1). However, Bankruptcy courts are often called upon to apply state laws in resolving claims against the estate. Grayson fails to explain how the Bankruptcy Court abused its discretion in applying this factor or in determining that efficiency considerations weighed in favor of staying the state court action.[16]

---

[15] As Appellees note, the Fucilo case involved an individual bankruptcy, whereas "the Debtors' bankruptcy filing is the largest in U.S. history and involves well over 38,000 proofs of claim."

[16] In his Reply Brief, Grayson cites In re Bogdanovich, Nos. 00 Civ. 2264 & 00 Civ. 2266, 2000 WL 1804133, at *6 (S.D.N.Y. Dec. 8, 2000), in which the district court affirmed the bankruptcy court's lifting of the automatic stay,

16

Sonnax Factor Six: primary involvement of third parties

In his opinion, Judge Gonzalez found that "this action does not involve primarily third parties." May 24, 2005 Tr. at 11. In his Reply Brief, Grayson argues that the Bankruptcy Court provided no rationale for its conclusion that this factor does not favor lifting the stay. Reply Br. at 10. He argues that he intends to sue defendants other than the Debtors, and that his proposed "Second Amended Complaint makes the same allegations against Debtors and the other defendants." Reply Br. at 11.[17] Appellees note that any claims Grayson has against other telecommunication providers could easily be severed from Grayson's action against the Debtors, which could be litigated in the Bankruptcy Court, and that there is no requirement or suggestion that the Debtors should be joined in the litigation with other providers. WorldCom Br. at 25. Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties.

Sonnax Factor Eleven: trial readiness

Grayson does not dispute the Bankruptcy Court's finding that the Grayson action was "not near ready for trial." May 24, 2005 Tr. at 12.

Sonnax Factor Twelve: "impact of the stay" and "balance of harms"

Grayson does not dispute Judge Gonzalez's finding that the "claims adjudication process . . . has been established and there is no support to disrupt the established process." Id.

Abuse of discretion review is a highly deferential standard of review, In re Bolar Pharmaceutical Co., Sec. Litigation, 966 F.2d 731, 732 (2d Cir. 1992), and Grayson does not

---

and noted that "the bankruptcy court found that the California Courts had the necessary expertise to hear the appeal and that granting relief from the stay would promote judicial efficiency and economy because resolution of the issues on appeal may obviate the need to relitigate these issues in the present adversary proceeding." Id. Grayson fails to note, however, that the Second Circuit reversed the Bogdanovich decision on appeal, and held that the bankruptcy court had abused its discretion in lifting the automatic stay. In re Bogdanovich, 292 F.3d 104, 115 (2d Cir. 2002).

[17] The Court notes that such a complaint would further delay the California court's resolution of the ownership status of calling card balances to the detriment of the conclusion of the bankruptcy action.

offer sufficient evidence or explanation to support a finding of abuse of discretion by the Bankruptcy Court in its application of the Sonnax factors.

## F. III. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is upheld in its entirety.

IT IS SO ORDERED.

Dated: New York, New York
August 4, 2006

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Order sent to:

*Counsel for the Appellant*
Charles R. Pierce, Jr.
32 Woodbury Rd
Huntington, New York 11743
Fax: 631.673.3456
Tel: 631.673.3939

James McMillan
Grayson & Kubli, PC
1420 Spring Hills Rd, Suite 230
McLean, VA 22102
Fax: 703.442.8672
Tel: 703.749.0000

*Counsel for Appellees*
Marcia Goldstein, Esq.
Lori Fife, Esq.
Alfredo Perez, Esq.
Adam Strochak, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Ave.
New York NY 10153
Tel: 212.310.8000
Fax: 212.310.8007